UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRANK WILBURN,

        Plaintiff,

v.

Case No. 16-564-pp

WATRY INDUSTRIES, LLC.,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2) AND DENYING DEFENDANT'S MOTION TO DISMISS RETALIATION CLAIM (DKT. NO. 8)**

On May 10, 2016, the plaintiff, who is represented by counsel, filed a complaint against defendant Watry Industries, LLC. Dkt. No. 1. Along with the complaint, the plaintiff filed a motion for leave to proceed *in forma pauperis*. Dkt. No. 2. The defendant waived service, then filed a motion to dismiss one count of the plaintiff's complaint—a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964. For the reasons explained below, the court will grant the plaintiff's motion for leave to proceed *in forma pauperis* and will deny the defendant's motion to dismiss.

**I.    THE COURT WILL GRANT THE PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS***

In order to allow a plaintiff to proceed without paying the filing fee, the court must first decide whether the plaintiff has the ability to pay the filing fee, and if not, must determine whether the lawsuit is frivolous. 28 U.S.C. §§1915(a) and (e)(2)(B)(i). In the plaintiff's motion, he indicated that he is

1

married, but that neither he nor his wife is employed. Id. at 1. He has a minor son whom he supports. Id. Over the last twelve months, he has received $600 from his girlfriend. Id. at 2. The plaintiff does not own a vehicle, nor does he own a home. Id. at 3. He does not have any cash or checking, savings or other similar accounts. Id. The plaintiff has learned that he may have approximately $2,000 in an old retirement account, but he has not been able to verify that. Id. at 4.

The plaintiff advises the court that he has been estranged from his wife for approximately twenty years. Id. at 4. While he is out of work, he is living with his son and the mother of his son, who provides support to them. Id. As for expenses, the plaintiff lists rent payments of $355 per month. Id. at 2. He has monthly expenses of $235 for phone and utilities. Id. He should be paying child support of approximately $230 per month, but he is in arrears. Id. Thus, the plaintiff has an income of $600 per month, and expenses of $585 per month. The court concludes from this information that the plaintiff has demonstrated that he cannot pay the $350 filing fee and $50 administrative fee.

Ordinarily, the court would proceed to examine whether the complaint is frivolous, malicious, or fails to state a claim for which relief can be granted. See 28 U.S.C. §1915. The court need not conduct that analysis in this case, however, because the defendant has appeared through counsel, and its motion

to dismiss challenged only the plaintiff's retaliation complaint.[1] Because the defendant did not seek to dismiss them, the court will allow the remaining four claims to proceed

For the reasons explained below, the court will deny the defendant's motion to dismiss the plaintiff's retaliation claim. Accordingly, the court will grant the plaintiff's motion to proceed without paying the filing fee, and will allow him to proceed on all five counts of the complaint.

## II. THE COURT WILL DENY THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S RETALIATION CLAIM

The defendant has moved to dismiss the plaintiff's retaliation claim on the sole ground that the plaintiff did not administratively exhaust this claim in the proceedings before the EEOC. The defendant argues that the plaintiff failed to check the box for "retaliation" in his EEOC charge and did not allege that he had been retaliated against for having engaged in a statutorily protected activity. According to the defendant, the court's determination of whether the plaintiff's retaliation claim can proceed should be based solely on the information contained in his EEOC charge, and not on additional information that the plaintiff and his attorney subsequently provided to the EEOC, because the defendant did not receive notice of such information.

---

[1] The plaintiff's complaint alleges five causes of action: (1) a claim for employment discrimination based on race in violation of Title VII of the Civil Rights Act of 1964; (2) a claim for employment discrimination on the basis of a disability, in violation of the Americans With Disabilities Act; (3) a claim for employment discrimination based on age, in violation of the Age Discrimination in Employment Act; (4) a claim for retaliation, in violation of Title VII, the ADA, and the ADEA; and (5) a claim for hostile and abusive work environment, in violation of Title VII, the ADA, and the ADEA.

3

Case 2:16-cv-00564-PP    Filed 09/19/16    Page 3 of 10    Document 13

The Seventh Circuit "has adopted a liberal standard for reviewing the scope of an EEOC charge," Farrell v. Butler Univ., 421 F.3d 609, 616 (7th Cir. 2005), and has cautioned that "[w]hat boxes . . . are checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint." Kristufek v. Hussman Foodservice Co., 985 F.2d 364, 368 (7th Cir. 1993). Accordingly, a complaint brought under Title VII may contain not only the allegations in the administrative charge, but also claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." Swearnigen-El v. Cook Cnty. Sheriff's Dep't, 602 F.3d 852, 864 (7th Cir. 2010) (quoting McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 481 (7th Cir. 1996)).

"Normally, retaliation and discrimination charges are not [sufficiently] like or reasonably related to one another" to permit an EEOC charge of one type of to support a subsequent civil suit for another. Id. at 864-65 (see also Sitar v. Indiana Dept. of Transp., 344 F.3d 720, 726–27 (7th Cir. 2003) (concluding that sexual harassment and sex discrimination claims were not reasonably related to the retaliation claim alleged in EEOC charge). A retaliation claim alleged in a complaint, however, can be reasonably related to allegations in a charge of discrimination when it is "so related and intertwined in time, people, and substance that to ignore the relationship for strict and technical application of the rule would subvert the liberal remedial purposes of the Act." Sitar, 344 F.3d at 727 (quoting Kristufek, 985 F.2d at 368). This approach takes into account the fact that many Title VII plaintiffs file an EEOC

4

charge without legal assistance, Taylor v. W. & S. Life Ins. Co., 966 F.2d 1188, 1195 (7th Cir. 1992), but does not allow a plaintiff to "circumvent the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." Steffen v. Meridian Life Ins. Co., 859 F.2d 534 (7th Cir. 1988) (quoting Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)).

In this case, the plaintiff's EEOC charge states the he began working for the defendant in July 2014. Dkt. No. 8-1 at 2. He claims to have been injured in February 2015, after which he "was reassigned to work alone in a room that was like a box and smelled horrible. Sherry (LNU) in HR told me that I couldn't use a certain bathroom or the break room. I was not allowed to talk to other workers or have them talk to me." Id. At some point, the plaintiff reported that treatment to HR, and "Sherry laughed and said it was an inside joke." Id. Later, the plaintiff overheard an assistant manager named Russ call him "a n-r" when talking to Quinn. Id. The plaintiff stated that "[i]n April or May 2015, [he] found a hand-written note written by Russ stating, 'Want [sic] you leave n-r' and a picture of a swastika." Id. The plaintiff "showed the note to Sherry and she laughed saying it was an inside joke." Id. The plaintiff asserted that he had been discriminated against on the basis of his race, age and disability. Id.

In his subsequent civil complaint, the plaintiff alleged that the defendant discriminated against him based on his race, age and disability. The plaintiff alleged that he was employed by the defendant from October 2014 until June 29, 2015. Dkt. No. 1 at ¶¶4, 9. He alleged that he could perform all of the functions, duties and responsibilities of his job at all relevant times. Id. at ¶11.

5

In February 2015, the plaintiff suffered a work-related back injury and was instructed by his physician to take the day off before returning to work, and to follow work restrictions when he returned to his job. Id. at ¶12. The plaintiff returned to his job to deliver his work restrictions, and he was told by an HR representative "to go home for the day." Id. at ¶14. A plant manager, Russ Detiege, allegedly called the plaintiff later that night, displeased with the plaintiff for having left work. Id. at ¶15. Detiege told the plaintiff he was "not going to get paid for sitting at home." Id.

The plaintiff returned to work the following day and was met with a box containing screws and bolts. Id. at ¶16. He was instructed to sort the parts into bags, and did so for four hours before leaving to go home. Id. The next day, the plaintiff arrived at work and overheard Detiege tell another employee, Quinn Guzman, to "keep tearing the bags open and let that Ol' Nigger keep counting them over and over until he gets tired of it." Id. at ¶17. The plaintiff alleges that he was subjected to this routine for approximately one and one-half months. Id. at ¶19.

The plaintiff alleges that on or about April 15, 2015, the defendant began to subject him to new and different abuses. An HR representative, Sheri Brandt, met the plaintiff at work and told him that he would be working in a different room. Id. at ¶20. This room was a small room with no interior lighting and a rancid smell, which, until the defendant asked the plaintiff to use it as a sorting room, had been used only as a passageway. Id. at ¶¶20-21. Upon opening one of the boxes of screws and bolts, the plaintiff found an note stating

6

"'Want [sic] you Just Leave niGGer' [sic] followed by an image of a swastika." Id. at ¶22. The plaintiff alleges that he reported the note to Brandt, who asked the plaintiff to wait while she notified to Detiege. Id. at ¶23. Brandt asked the plaintiff to write a statement regarding the note, and while he was doing so, the plaintiff heard Brandt and Detiege laughing. Id. The plaintiff asked why they were laughing, and they replied "that it was an inside joke." Id. The defendant allegedly took no action in response to the note he had found in the box. Id. at ¶25.

A few days later, the plaintiff was informed by the HR representative and the plant manager that he no longer would be able to use the break room to get food or water, or to use the telephone. Id. at ¶27. Instead, he would need to ask another person to enter the break room to get those things for him. Id. After that, the plaintiff's co-workers began to tell him that they could not speak with him. Id. at ¶29. The plaintiff alleged that he "was effectively segregated from all other employees. He was not invited to any employee trainings or special events. He was not even allowed on the floor or in the break room." Id. at ¶30.

Around April 23, 2015, the plaintiff visited his physician. Id. at ¶34. The plaintiff's physician showed the plaintiff an email from Detiege, in which Detiege allegedly asked the plaintiff's physician to discontinue the plaintiff's work restrictions. Id. The plaintiff also reported to his physician that, despite his work restrictions, the defendant was requiring the plaintiff to lift and pull heavy boxes. Id. at ¶35. Detiege somehow learned that the plaintiff had told his physician that the defendant was not accommodating the plaintiff's work

restrictions, and warned the plaintiff that he as "no right to be telling this doctor what's going on with this company." Id. at ¶37. The plaintiff then was reassigned to work under a supervisor named Amy Carpenter, who allegedly subjected him to racist insults, such as calling him "boy." Id. at ¶¶39-41.

The plaintiff reported Carpenter's statements to HR personnel. Id. at ¶42. On June 29, 2015, the plaintiff discussed his work restrictions with an HR representative, who allegedly told the plaintiff "to go home and rest," and that "he should never have returned to work until he was one hundred percent (100%) healed." Id. at ¶43. She also allegedly told the plaintiff not to contact an attorney, because she would "handle it." Id. at ¶45. The plaintiff alleges that he has had no further communication with the defendant, and is receiving no pay or benefits. Id. at ¶45.

The allegations supporting the plaintiff's retaliation and discrimination claims are "so related and intertwined in time, people, and substance that to ignore the relationship for strict and technical application of the rule would subvert the liberal remedial purposes of" Title VII. Kristufek, 985 F.2d at 368. The two claims arise out of a common factual basis. The three individuals named in the plaintiff's EEOC charge (Russ, Quinn, and "Sherry") are named in the plaintiff's complaint, and two of whom (Russ and "Sheri") play integral roles in the plaintiff's retaliation claim.[2] As alleged in the complaint, certain of the

---

[2] The plaintiff's EEOC charge refers to a "Sherry" as a representative of the defendant's HR department, while he refers to a "Sheri" in his complaint. At this stage, the court has no basis to conclude that "Sherry" and "Sheri" are different persons; this discrepancy likely is nothing more than a spelling mistake in one of the documents.

8

defendant's adverse actions against the plaintiff (isolating the plaintiff from his co-workers and forbidding him from using the break-room or the telephone) occurred soon after the plaintiff complained to the defendant's HR department regarding Detiege's racist note, a protected activity. E.g., Castro v. DeVry Univ., 786 F.3d 559, 564 (7th Cir. 2015) ("Plaintiffs sincerely and reasonably believed they were complaining about conduct prohibited by Title VII, which is all that is required to establish protected activity."). "That should have been enough even in a perfunctory investigation of the charges to have revealed the retaliation aspect as part of the whole." Kristufek, 985 F.2d at 368. The similarities between the plaintiff's EEOC charge and the more detailed allegations in the complaint lead the court to conclude that the allegations of retaliation alleged in the complaint could reasonably be expected to grow out of an EEOC investigation of the allegations in the plaintiff's EEOC charge. The court concludes that the plaintiff adequately exhausted his administrative remedies before filing his complaint in federal court.

## III. CONCLUSION

Accordingly, the court **GRANTS** the plaintiff's motion to proceed *in forma pauperis*, and **WAIVES** the filing fee associated with the complaint. Dkt. No. 2.

The court **DENIES** the defendant's motion to dismiss the plaintiff's retaliation claim. Dkt. No. 8.

Dated in Milwaukee, Wisconsin this 19th day of September, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge